648 So.2d 879 (1995)
Lillian W. RUSSO, et al.
v.
Dr. Hiram VASQUEZ, et al.
No. 94-CC-2407.
Supreme Court of Louisiana.
January 17, 1995.
Milo A. Nickel, Jr., Woodley, Williams, Fenet, Boudreau, Norman & Brown, Lake Charles, for applicants.
William P. Crews, Jr., Watson, Murchison, Crews, Arthur & Corkern, Natchitoches, Edward P. Chevallier, Jr., Burkett & Chevallier, many, for respondents.
KIMBALL, Justice.[*]
The issue in this case is whether a settlement between a medical malpractice claimant and a qualified health care provider and his insurer, wherein the insurer paid the claimant $95,000.00 in cash and accepted a $5,000.00 discount, constitutes a $100,000.00 settlement sufficient to trigger the Louisiana Patient Compensation Fund (PCF)'s liability for excess damages and preclude the PCF from contesting the qualified health care provider's liability. We conclude that the settlement in this case is not a $100,000.00 settlement and does not trigger the PCF's liability for excess damages or preclude the PCF from contesting the qualified health care provider's liability because the PCF's liability can only be triggered when a qualified health *880 care provider's insurer or a self insured qualified health care provider settles with a medical malpractice claimant by paying the claimant a full $100,000.00.

FACTS AND PROCEDURAL HISTORY
On July 12, 1993, Mrs. Lillian W. Russo, individually and as representative of the estate of her late husband, Dr. Anthony Russo, filed a petition for damages against Dr. Hiram Vasquez, a physician duly qualified under the Louisiana Medical Malpractice Act; St. Paul Fire and Marine Insurance Company (St. Paul), Dr. Vasquez's liability insurer; and the PCF.[1] In her petition, Mrs. Russo alleged that she sustained severe and permanent neurological dysfunction after she underwent an epidural anesthesia administered by Dr. Vasquez on or about June 2, 1988, while she was his patient at Physicians' and Surgeons' Hospital in Shreveport. In addition to her allegations of malpractice, Mrs. Russo also alleged that in order to settle her case within the parameters of the Louisiana Medical Malpractice Act, she accepted ninety-five thousand dollars ($95,000.00) and granted Dr. Vasquez and St. Paul a five thousand dollar ($5,000.00) discount in exchange for prompt payment, dissolution of the Medical Review Panel, associated costs, and the ability to pursue immediately whatever rights she had against the PCF. Moreover, she alleged that because she had reached a settlement agreement with Dr. Vasquez and St. Paul, those parties had judicially confessed all liability, and the only remaining issue for the trial court to decide was the amount of general and special damages, including past, present and future medical care, that she should be awarded.
On the same day Mrs. Russo filed the aforementioned petition for damages, she also filed a petition, along with Dr. Vasquez, St. Paul, and Dr. Felix K. Prakasam[2], seeking court approval of the settlement of the malpractice claim and the demand for payment of excess damages by the PCF. The trial court concluded that the settlement conformed to the provisions of the Louisiana Medical Malpractice Act and held that Dr. Vasquez and his insurer were released from any and all claims arising out of the malpractice claim but that Mrs. Russo, individually and as representative of her late husband's estate, had reserved her rights against the PCF.
After the trial court concluded that the settlement conformed to the provisions of the Louisiana Medical Malpractice Act, the PCF answered Mrs. Russo's petition for approval of the settlement and set forth several affirmative defenses, including a denial that any liability on its part, statutory or otherwise, had been triggered. The PCF alleged that because the settlement in this case was for less than $100,000.00, Mrs. Russo was not entitled to excess damages because the PCF's statutory liability had not been triggered. Mrs. Russo then moved to strike all portions of the PCF's answer relating to or touching upon any matter other than the issue of the amount of damages that she would ultimately be entitled to recover. Citing Stuka v. Fleming, 561 So.2d 1371 (La. 1990), cert. denied 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990) and Koslowski v. Sanchez, 576 So.2d 470 (La.1991), the trial court granted Mrs. Russo's motion and ordered several paragraphs of the PCF's answer stricken from the record.
The Third Circuit Court of Appeal denied the PCF's application for a supervisory writ to review the trial court's decision on the Motion to Strike. In denying the application, the third circuit noted:
The issues presented in this writ application are presented in the context of reviewing the trial court's granting of a Motion to Strike which motion was filed by plaintiff-respondent, Lillian W. Russo. This court finds that the trial court must have determined that the parties to the settlement at issue in this matter intended that the settlement be for One Hundred Thousand Dollars ($100,000) since the judgment refers to the reasons articulated in Stuka v. Fleming, 561 So.2d 1371 (La.1990), and *881 Koslowski v. Sanchez, 576 So.2d 470 (La. 1991). Relator, the Louisiana Patient's [Sic] Compensation Fund, has provided this court with no basis for finding that this conclusion as to the intent of the parties to this settlement was in error. Accordingly, we find no error in the trial court's ruling. This court expresses no opinion on the issues regarding the proof required of the plaintiff at the trial of this matter in order for her to recover against the PCF as these issues are not properly before this court in reviewing the ruling on the Motion to Strike.
Russo v. Vasquez, 93-1387 (La.App. 3d Cir. 12/23/93).
Pursuant to plaintiffs' motion, the trial court scheduled a jury trial for Monday, January 10, 1994. On January 6, 1994, the PCF filed a motion to continue, advising the trial court that it was applying to this Court for supervisory writs to determine whether the parties to this case would have to prove and/or contest issues concerning the medical causation of Mrs. Russo's alleged injuries. The trial court denied the PCF's motion for a continuance on January 6, 1994, and the third circuit, finding no error in the trial court's ruling on the continuance, denied the PCF's application for supervisory writs on January 7, 1994. The PCF then filed a priority application in this Court seeking supervisory relief in the form of an emergency stay. This Court granted the PCF's application, noting:
Granted. Remanded to the trial court for evidentiary hearing to determine amount of discount allowed and to determine if settlement equated to $100,000.00. If so, the motion to strike is properly granted; if not then the trial court must deny the motion. See Koslowski v. Sanchez, 576 So.2d 470 (La.1991). Thereafter, the matter shall proceed according to law.
Russo v. Vasquez, 94-0054 (La. 1/11/94), 631 So.2d 457.
On January 12, 1994, the trial court, on its own motion, issued an order which stated in pertinent part:
Pursuant to order of the Supreme Court dated January 11, 1994, this Court ex proprio motu, clarifies its previous ruling to specify that which it deemed implicit, that being that it is clear from the settlement documents that the full sum of One Hundred Thousand and No/100 ($100,000.00) Dollars was paid and a discount was given to cover allowable costs in accord with Koslowski v. Sanchez, 576 So.2d 470 (La. 1991).
The trial court set the matter for trial on January 19, 1994. On January 14, 1994, pursuant to an application for supervisory relief filed by the PCF, the third circuit reversed and set aside the judgment of the trial court and directed the trial court to conduct the evidentiary hearing previously mandated by this court.
The trial court set the evidentiary hearing for January 18, 1994, and noted that depending upon the outcome of the evidentiary hearing, trial would proceed on January 19, 1994. The PCF sought emergency relief from this Court on January 18, 1994, and this Court stayed the evidentiary hearing and trial, stating that the hearing could be reset after ten days, and the trial could be reset thereafter so long as that setting allowed adequate time to seek review of the judgment on the evidentiary hearing. Russo v. Vasquez, 94-0136 (La. 1/18/94); 629 So.2d 1187.
By agreement of counsel, the matter was submitted on briefs on April 25, 1994, and on April 29, 1994, the trial court concluded that the settlement in this case was in excess of $100,000.00. The trial court observed that while the evidence in the record revealed that the only other costs incurred by the insurer totalled $875.62, making the insurer's total payment $95,875.62, the insurer avoided paying any costs associated with a jury trial by settling this case. This prompted the trial court to add the $95,875.62 the insurer actually paid to the reasonably anticipated costs of a jury trial, which the court estimated at $6,099.26. The trial court then concluded that the settlement was in excess of $100,000.00. The PCF sought review of the trial court's ruling in the third circuit on July 19, 1994, and that court, finding no error in the trial court's ruling, denied the PCF's application on September 23, 1994. Russo v. Vasquez, *882 94-869 (La.App. 3d Cir. 9/23/94). We granted the PCF's application for supervisory review on September 26, 1994 to review the trial court's decision on the issue of whether the settlement in this case is a $100,000.00 settlement. Russo v. Vasquez, 94-2407 (La. 9/26/94); 642 So.2d 1311.

ANALYSIS

I.
In 1975, the Louisiana legislature enacted the Louisiana Medical Malpractice Act, La. R.S. 40:1299.41 et seq., to provide a scheme of compensation for medical malpractice victims who suffer injury or death after being treated by qualified health care providers.[3] Under this scheme of compensation, which sets out precise limits of liability and ceilings on recovery, the liability of a single qualified health care provider is limited to $100,000.00 dollars for the injury to or the death of any one person. La.R.S. 40:1299.42(B)(2). Moreover, the Act provides that damages in excess of $100,000.00, but which do not exceed $500,000.00, shall be paid by the PCF. La.R.S. 40:1299.42(B)(3).
In cases where a health care provider's insurer agrees to settle a claim against its insured but the claimant demands an additional amount, in excess of the $100,000.00 already paid by the insurer, from the PCF for a complete and final release, La.R.S. 40:1299.44(C) requires the claimant to utilize a special procedure. The claimant must first file a petition seeking approval of the settlement and demanding additional damages from the PCF. La.R.S. 40:1299.44(C)(1). If the Patient's Compensation Fund Oversight Board, the claimant, and the insurer of the health care provider or the self-insured health care provider, as the case may be,[4] cannot agree on the amount to be paid by the PCF, the trial court must conduct a trial to determine the amount of the victim's damages exceeding the amount already paid by the health care provider or his insurer. La. R.S. 40:1299.44(C)(5). In approving a settlement or determining the amount, if any, to be paid by the PCF, the court is required to "consider the liability of the health care provider as admitted and established if the insurer has paid its policy limits of one hundred thousand dollars, or if a self insured health care provider has paid one hundred thousand dollars." La.R.S. 40:1299.44(C)(5).
La.R.S. 40:1299.44(C)(5) makes it clear that when a malpractice victim settles with a health care provider or the health care provider's insurer for $100,000.00, that settlement triggers the PCF's liability for excess damages under La.R.S. 40:1299.42(B)(3). Stuka, 561 So.2d at 1373. Such a settlement also precludes the PCF from contesting the health care provider's liability. Id. at 1374. The issue we must decide, however, is whether the settlement Mrs. Russo entered into with Dr. Vasquez and St. Paul, or indeed any settlement wherein the qualified health care provider or his insurer pays less than $100,000.00, accomplishes the same result.
Although R.S. 40:1299.44(C)(5), by its express language, requires the qualified health care provider's insurer or the self insured qualified health care provider, as the case may be, to pay one hundred thousand dollars before liability is considered admitted, the plaintiff argues that the $95,000.00 settlement in this case was entered into based upon their reading of our holding in Koslowski v. Sanchez, 576 So.2d 470 (La.1991).
Despite plaintiff's contention, the Louisiana Medical Malpractice Act's express language dictates that a settlement of less than $100,000.00 does not trigger the PCF's statutory liability or preclude the PCF from contesting the qualified health care provider's liability. LSA-R.S. 40:1299.44(C)(5) clearly provides that the liability of a health care provider is established by payment of the full monetary extent of that liability under the statute, $100,000.00. Well accepted principles of statutory interpretation dictate that when a law is clear and unambiguous and its application does not lead to absurd consequences, the law should be applied as written and no further interpretation may be made in search of the intent of the legislature.[5] Hence, La.R.S. 40:1299.44(C)(5) requires that *883 if a malpractice claimant and a qualified health care provider's insurer or a self-insured qualified health care provider enter into a settlement, the insurer must pay its policy limits of $100,000.00 before the PCF's statutory liability is admitted and before the PCF is precluded from contesting the qualified health care provider's liability.
In Koslowski, a young female plaintiff suffered permanent nerve damage and facial dysesthesia as a result of a substandard root canal. After concluding that her dentist had committed malpractice, the jury awarded Ms. Koslowski $250,000.00. Shortly after the trial, Ms. Koslowski executed a release in favor of her dentist, the clinic where he practiced, and his insurers for the stated consideration of $100,000.00. In the release, she acknowledged receipt of $100,000.00 or its equivalent and reserved her rights against the PCF. However, while she acknowledged receipt of the sum of $100,000.00, the insurer only paid her $93,500.00. The insurer's attorney settled with the plaintiff for the lesser amount by arguing that the costs of the jury and the medical review panel, which the insurer had previously paid, should be deducted from Ms. Koslowski's recovery. Koslowski, 576 So.2d at 473. Counsel for the plaintiff consented to the settlement because interest does not run on the $100,000.00 sum. Id. After granting certiorari, this court faced the issues of: (1) whether there was a settlement for $100,000.00 on behalf of the health care provider; and (2) if so, whether the $100,000.00 settlement after trial prevented the fund from contesting liability in its appeal. We concluded that when there is a settlement of $100,000.00 between a plaintiff and his or her health care provider's insurer, the PCF cannot contest liability. We further held that the allowance of a small discount for prompt payment did not alter the fact that the health care provider's insurer had settled the claim against its insured as required by the statute. Koslowski, 576 So.2d at 473.
In Koslowski, we cited our earlier decision in Stuka v. Fleming, 561 So.2d 1371 (La. 1990) for the proposition that when a malpractice victim settles for $100,000.00 with one health care provider or its insurer, that settlement forecloses the issue of the PCF's liability. In Stuka, the plaintiffs sued three associated physicians, the medical corporation which employed them, and their medical malpractice insurer. The plaintiffs agreed to a settlement whereby the claims against two of the three physicians would be dismissed with prejudice, and the plaintiffs would reserve their rights against the remaining physician, the corporation, the insurer, and the PCF to the extent necessary to preserve their claim for damages in excess of $100,000.00 from the PCF. The PCF argued that the $100,000.00 settlement which resulted in the dismissal of four health care providers did not constitute an admission of liability under La.R.S. 40:1299.44(C)(5). Recognizing that La.R.S. 40:1299.44(C)(5) did not make any express provisions for a case in which multiple health care providers have been joined as defendants and where only one of the defendants pays the $100,000.00 in settlement, we interpreted R.S. 40:1299.44(C)(5) as dispensing with the litigation of liability between the victim and the PCF after one health care provider had paid $100,000.00 in settlement. In reaching that decision, we reasoned that the Medical Malpractice Act contemplates that the issue of liability is generally to be determined between the malpractice victim and the health care provider, either by settlement or by trial, and that the PCF is primarily concerned with the issue of the amount of damages. We also reasoned that payment by one health care provider of the maximum amount of his liability statutorily establishes that the plaintiff is a victim of that health care provider's malpractice such that the fund cannot contest the admission of liability. Once statutory admission of liability has occurred, we concluded, the only issue between the victim and the PCF is the amount of damages sustained by the victim as a result of the admitted malpractice. However, in Stuka, we specifically noted that:
The fund may be concerned with the issue of liability when, for example, the only named health care provider settles with the malpractice victim for less than $100,000.00.
See Stuka v. Fleming, 561 So.2d at 1374 n. 8.
In this case, the record reveals that the qualified health care provider's insurer only paid $95,875.62. The trial court predicated *884 its conclusion, that the settlement at issue constitutes a $100,000.00 settlement, by assuming that when the insurer's actual payment of $95,875.62 is added to the reasonably anticipated costs of a jury trial, $6,099.26, the settlement amount exceeds $100,000.00. However, La.R.S. 40:1299.44(C)(5) provides that a trial court, in determining whether to approve a settlement, is required to consider the liability of a health care provider as admitted and established only where the insurer has paid its policy limits of $100,000.00. Because the record in this case clearly indicates that the insurer only paid $95,872.65, the trial court's conclusion is incorrect. Indeed, the insurer did not pay its policy limits of $100,000.00, rather, the insurer compromised this claim for only ninety-five percent of its policy limits. The fact that the insurer saved approximately $6,099.26 does not render the settlement in this case valid. Because the insurer failed to pay $100,000.00 in this case, the settlement does not satisfy La.R.S. 40:1299.44(C)(5). Consequently, we hold that a settlement of less than a full $100,000.00 is insufficient to trigger the PCF's statutory liability for excess damages and insufficient to preclude the PCF from contesting the qualified health care provider's liability. Regardless of whether the settlement is before or after trial, the settlement must be for a full $100,000.00 paid to the medical malpractice claimant by the qualified health care provider or his insurer. The settlement cannot include any discounts for amounts the medical malpractice claimant is not legally obligated to pay. Simply stated, $100,000.00 means $100,000.00. To the extent Koslowski v. Sanchez, 576 So.2d 470 (La.1991), is inconsistent with this opinion, it is hereby expressly overruled.
Accordingly, the trial court's judgment of April 29, 1994 is hereby reversed, and this matter is remanded for further proceedings consistent with this opinion.

II.
The PCF also contends that Mrs. Russo's claims against Dr. Vasquez are prescribed. Because the record before us contains insufficient evidence for us to determine that issue, the trial court is hereby instructed to render a decision on the prescription issue when it considers the other issues relative to Dr. Vasquez's liability.
REVERSED AND REMANDED.
WATSON, J., concurs but notes that the ruling will discourage settlements (which the law favors) and disagrees with overruling Koslowski which is dicta.
NOTES
[*] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment, recused; not on panel. Rule IV, Part 2, § 3.
[1] In her petition, Mrs. Russo alleged that as a result of her injuries, her husband suffered a loss of consortium. She also named Dr. Vasquez as a defendant only in a procedural capacity because at the time suit was filed she was under the impression that she had settled her claim against him so as to trigger the PCF's statutory liability.
[2] Dr. Felix Prakasam, who Mrs. Russo also sued for malpractice, was only made a party to the settlement agreement so that Mrs. Russo's claims against him could be dismissed with prejudice.
[3] See La.Acts 1975, No. 817.
[4] La.R.S. 40:1299.44(C)(2) requires that a copy of the claimant's petition must be served on the Patient's Compensation Fund Oversight Board, the health care provider, and his insurer.
[5] See La.Civ.Code art. 9.