772 So.2d 331 (2000)
Adam CEASAR Sr., et al.
v.
Dr. Richard J. BARRY, et al.
No. 99-01733.
Court of Appeal of Louisiana, Third Circuit.
November 2, 2000.
Writ Denied February 2, 2001.
*332 Richard B. Cappel, Raggio, Cappel, Chozen & Berniard, Lake Charles, LA, Counsel for Lake Charles Memorial Hospital.
Peter T. Dazzio, Watson, Blanche, Wilson & Posner, Baton Rouge, LA, Counsel for Dr. Richard J. Barry, et al.
Robert W. Stratton, Baton Rouge, LA, Counsel for Adam Ceasar Sr., et al.
Michael Keith Prudhomme, Woodley, Williams, Boudreau, Norman & Brown, L.L.P., Lake Charles, LA, Milo Nickel, Lake Charles, LA, Counsel for LA. Patients' Compensation Fund.
(Court composed of Judge JOHN D. SAUNDERS, Judge OSWALD A. DECUIR, Judge MICHAEL G. SULLIVAN, Judge GLENN B. GREMILLION, and Judge ELIZABETH A. PICKETT.)
DECUIR, Judge.
This appeal raises the question of whether actual receipt of $100,000 is necessary to trigger application of the statutory admission of liability in the medical malpractice scheme.
Adam and Elvia Ceasar filed suit against Dr. Richard Barry, his insurer, Physicians National Risk Retention Group (PNRRG), and Lake Charles Memorial Hospital for alleged malpractice in the prenatal care provided to Elvia and in the delivery and birth of their minor son, Adam Ceasar, Jr. During the course of the litigation, the plaintiffs and PNRRG, which is in receivership, entered into a settlement agreement for $100,000; the agreement was approved by the bankruptcy court. The district court also approved the settlement and found that pursuant to La.R.S. 40:1299.44, liability was admitted and established, thereby precluding the Louisiana Patients' Compensation Fund from contesting that issue in a subsequent proceeding for damages in excess of $100,000. The Fund appeals that judgment, arguing that because of the insurer's bankruptcy, the plaintiffs are unlikely to receive the full amount of the settlement, and the provisions of La.R.S. 40:1299.44 are, therefore, not met.
The facts giving rise to this suit are not at issue.[1] Rather, the question before the court is what effect a bankruptcy court's pro rata distribution of assets has on a medical malpractice settlement. La.R.S. 40:1299.44(C)(5) provides in pertinent part:
In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
The settlement documents in the record before us evidence an agreement by the Ceasars to accept $100,000 from PNRRG in exchange for releasing Dr. Barry from *333 liability. The documents declare the bankruptcy status of PNRRG and contain an acknowledgment by all parties that the Ceasars may not receive the full $100,000 settlement. In fact, it is estimated that they will receive perhaps 30% of that amount:
[H]owever, due to said insurer being in liquidation, the undersigned acknowledge that they may receive only their pro rata distributions as approved by the court having jurisdiction over the liquidation, which may be considerably less than the policy limits, which are being tendered, said distribution is estimated at this time to be about 30% per claimant (said percentage may increase or decrease, depending upon funds available in the receivership proceeding)....
When the Fund opposed the settlement between the Ceasars and PNRRG, it argued that Dr. Barry did not commit malpractice and that the actual settlement amount did not equal the $100,000 statutory threshold necessary to trigger an admission of liability. Following a hearing on the petition for approval, the trial court partially approved the settlement, specifically finding that "when a plaintiff is forced to expect less than a $100,000 payment on a settlement agreement of that amount because the insurer is in receivership, a settlement may be approved and the jurisdiction of [the Fund] `may be invoked' as to damages only." However, the trial court found that the liability of the Fund relative to excess damages had not been triggered due to an absence of an admission of liability on the part of Dr. Barry.
Dr. Barry subsequently filed an affidavit in which he admitted to falling below the applicable standard of care in his treatment of Elvia. Based on the affidavit, Lake Charles Memorial Hospital petitioned the trial court to approve the proposed settlement and hold that the settlement triggered a statutory admission of liability. The trial court approved the settlement, and held that the statutory admission of liability was applicable.
The Fund applied for a supervisory writ of review, and an order granting a stay of the proceeding was granted by the trial court. However, relying on Morgan v. United Medical Corp. of New Orleans, 95-1868 (La.App. 4 Cir. 6/25/97); 697 So.2d 307, writ denied, 97-1982 (La.11/21/97); 703 So.2d 1307, we denied the writ. The Fund then filed a petition for suspensive appeal, and it is on this petition that we now consider this case. The Fund's sole assignment is that the trial court erred in finding that a statutory admission of liability is applicable where the Ceasars knowingly settled for an amount less than the $100,000 statutory threshold.
The Louisiana Medical Malpractice Act, La.R.S. 40:1299.41 et seq., provides a mechanism of compensating victims of medical malpractice. See La.Acts 1975, No. 817, § 1. Under the Act, the liability of a single qualified health care provider is limited to $100,000 for the injury or death of any one person. La.R.S. 40:1299.42(B)(2). Damages in excess of $100,000, but less than or equal to $500,000, are paid by the Fund. A malpractice victim's settlement with one health care provider or his insurer for $100,000 triggers the Fund's liability for excess damages and precludes the Fund from contesting that health care provider's liability. Stuka v. Fleming, 561 So.2d 1371 (La. 1990). In Koslowski v. Sanchez, 576 So.2d 470, 474 (La.1991), the supreme court explained this procedure:
Liability under the Medical Malpractice Act is based on the initial $100,000 paid by the health care provider or its insurer, pursuant to judgment, settlement or arbitration. When the insurer has admitted liability up to the statutory maximum, the liability of the health care provider is established, and the only remaining issue is the damages, if any, owed by the patient's compensation fund. The fund cannot contest liability when there is a binding settlement of *334 $100,000 by the health care provider, either before or after trial.
Thus, the only issue remaining after a tort victim has settled with her health care provider is the quantum of the damages.
In Koslowski, the supreme court addressed a situation in which a jury awarded a plaintiff $250,000 in damages for her malpractice claim. After the trial, the plaintiff executed a release of the defendant doctor and his insurers in consideration "of $100,000, or equivalent, receipt and sufficiency of which is hereby acknowledged," but reserved her rights against the Fund. Id. at 473. Although the plaintiff acknowledged receipt of $100,000, the insurer only paid $93,000, as it deducted the costs of the jury and medical review panel from the plaintiffs recovery. In determining whether the settlement prohibited the Fund from contesting liability pursuant to La.R.S. 40:1299.44(C)(5), the supreme court stated, "Allowing a small discount for prompt payment does not alter the fact that the insurer of the health care provider settled the claim against its insured as required by the statute." Id. Citing Stuka, the supreme court further held that the "settlement for $100,000 with one health care provider or its insurer forecloses the issue of liability as to the patient's compensation fund." Id. The supreme court went on to explain that "although plaintiff did not receive the full amount she was due, there was a facial settlement for $100,000," and as such, the statutory requirements of the Louisiana Medical Malpractice Act were met. Id. (Emphasis added).
In the similar case of Russo v. Vasquez, 94-2407 (La.1/17/95); 648 So.2d 879, the supreme court revisited the issue of whether a less than $100,000 settlement was sufficient to trigger the Fund's liability, precluding it from contesting a qualified health care provider's liability. In Russo, the qualified health care provider judicially confessed all liability and the tort victim accepted $95,000. The victim granted the health care provider and his insurer a $5,000 credit in exchange for prompt payment and the ability to immediately pursue whatever rights she had against the Fund.
To arrive at the $100,000 statutory requirement, the trial court gave the health care provider's insurer credit for not only its actual expenses, but also the anticipated expenses of trial. As such, the trial court added to the $95,000 settlement the additional costs incurred by the insurer of $875.62, as well as the reasonably anticipated costs of a jury trial, which the trial court estimated to be $6,099.26, to arrive at the conclusion that the settlement was in excess of $100,000.
In reversing the trial court, as well as overruling Koslowski, the supreme court held that La.R.S. 40:1299.44(C)(5) provides that the liability of a health care provider is established by payment of $100,000, the full monetary extent of that liability under the statute. The supreme court explained that any settlement between the malpractice claimant and the health care provider, or his insurer, must be for $100,000 before statutory liability is established and the Fund is precluded from contesting the health care provider's liability. The supreme court further explained that, in Koslowski, it considered the issue of liability was generally a determination between the malpractice victim and the health care provider, either by settlement or by trial, and that the Fund was primarily concerned with the issue of the amount of damages. In rethinking the matter, the supreme court held that "La.R.S. 40:1299.44(C)(5) provides that a trial court, in determining whether to approve a settlement, is required to consider the liability of a health care provider as admitted and established only where the insurer has paid its policy limits of $100,000." Russo, 648 So.2d at 884. The supreme court stated:
[T]he settlement must be for a full $100,000 paid to the medical malpractice claimant by the qualified health care provider or his insurer. The settlement *335 cannot include any discounts of amounts the medical malpractice claimant is not legally obligated to pay. Simply stated, $100,000 means $100,000.
Id.
In Morgan, the case on which the trial court herein relied, the tort victim compromised her claim against the health care provider and his insolvent insurer, PNRRG,[2] for the facial sum of $100,000, prior to a trial on the merits. The trial court issued a judgment approving the joint petition and ordered the following:
[T]he proposed settlement be and the same is hereby approved for a total sum of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS BY [the health care provider] AND PNRRG; and that payment of said sum by [the health care provider] and PNRRG constitutes a statutory admission of liability.
Id. at 308. The Fund objected to the judgment arguing that, until $100,000 was actually paid to the plaintiff, there was no statutory admission of liability. After hearing the arguments of both parties, the trial court held "the mere agreement to pay, regardless of actual payment, precluded [the Fund] from contesting liability." Id. at 308. In its appeal, the Fund's sole assignment was that the trial court erred in finding the rendition of a $100,000 settlement in the compromise agreement, without actual payment, met the statutory threshold required to prohibit the Fund from contesting the liability of the health care provider. The Fund argued that the malpractice statute and the supreme court's finding in Russo required actual payment of $100,000, as opposed to an agreement to pay, and that the order by the liquidator of PNRRG authorizing the payment of 27.14% of all settled claims was evidence that the plaintiff had not received the full $100,000. Additionally, the Fund argued that there was no guarantee that further payments would be made, despite the anticipation that future distributions might be forthcoming.
The Morgan court, however, distinguished Russo and reasoned that the trial court in Russo factored in costs which were outside the scope of La.R.S. 40:1299.44(C)(5) to reach $100,000, while in Morgan, "the parties actually settled for $100,000.00." Id. at 309. The Fourth Circuit further explained that:
The fact that PNRRG was in receivership and subsequently directed by the receiver to pay less than the agreed upon amount was not the plaintiff's fault, therefore, she should not bear the additional burden of establishing liability once it has been statutorily admitted. [The health care provider] has acknowledged that he is liable for his acts and his insurer, PNRRG, has chosen not to contest liability.
Id. Morgan further held that the "obligation to pay the full amount of the settlement" was sufficient to trigger the statute "regardless of whether the plaintiff actually collects $100,000.00." Id.
Several months after its decision in Morgan, the Fourth Circuit addressed the issue again in Taylor v. Tulane University of Louisiana, 97-0977 (La.App. 4 Cir. 9/17/97); 699 So.2d 1117, a case which involved a settlement for $75,000, plus other consideration in excess of $25,000. Following Russo, the Fourth Circuit held that statutory liability was not triggered and that the Fund has an absolute right to contest the liability of the health care provider when it settles for less than $100,000. The case did not involve a bankrupt insurer.
Our review of the jurisprudence, and the rationale articulated therein, compels us to affirm the trial court's ruling in favor of the Ceasars. We agree with the Morgan court which reasoned that a plaintiff should not be penalized by the bankruptcy of the insurer of a negligent health care provider and hold that the continuing *336 settlement obligation to pay $100,000, rather than the actual payment of $100,000, is sufficient to trigger the statutory admission of liability under La.R.S. 40:1299.44(C)(5). The Fourth Circuit found Morgan distinguishable from Russo because the insurer in Morgan had a continuing obligation to pay the full sum of $100,000, whereas in Russo, after the discount of $5,000, the insurer only paid $95,000. The mere agreement to pay the full sum of $100,000, regardless of whether the victim actually collected any of the money, was sufficient to trigger statutory liability in Morgan and is likewise sufficient herein. We also point out, as did the Morgan court, that it is not the fault of the claimant that the health care provider's insurer is in liquidation and recognize that the health care provider has judicially admitted liability. Finally, it is worth noting that the supreme court denied writs in Morgan. See 97-1982 (La.11/21/97), 703 So.2d 1307.
Accordingly, we find no error in the ruling of the trial court. The judgment approving the settlement agreement between the Ceasars and PNRRG is affirmed.
AFFIRMED.
GREMILLION, J., dissents with written reasons.
SULLIVAN, J., dissents for reasons assigned by GREMILLION, J.
GREMILLION, J., dissenting.
I respectfully disagree with the majority's decision herein as well as their reliance on Morgan v. United Med. Corp. of New Orleans, 95-1868 (La.App. 4 Cir. 6/25/97); 697 So.2d 307, writ denied, 97-1982 (La.11/21/97); 703 So.2d 1307. In Morgan, our colleagues on the Fourth Circuit found that a $100,000 settlement agreement entered into with the understanding that the tort victim would actually receive an amount, anticipated to be less than a third of the settlement amount, triggered the statutory liability of a health care provider. Our colleagues found Morgan distinguishable from Russo v. Vasquez, 94-2407 (La.1/17/95); 648 So.2d 879, in that, the insurer in Morgan had a continuing obligation to pay the full sum of $100,000, whereas in Russo, after the discount of $5,000, the insurer only paid $95,000. The court found the mere agreement to pay the full sum of $100,000 was all that was required to trigger statutory liability regardless of whether the victim actually collected any of the money. The Fourth Circuit also appeared to give weight to the fact that it was not the fault of the claimant that the health care provider's insurer was in liquidation and that the health care provider judicially admitted liability.
I believe the distinction made in Morgan to be a distinction without a difference for the purpose of the Louisiana Medical Malpractice Act. I find no difference between a situation in which the liquidator of an insolvent insurer settles with a tort victim for the full sum of $100,000, with the understanding that the victim will only receive payment of a small fraction of the settlement and the hope of future payments, and the rendition of a $100,000 settlement with the agreement that less than $100,000 will actually be paid.
The supreme court in Russo overruled "facial" settlements such as those that recited $100,000 settlements, but actually paid less than that sum. In reviewing the Koslowski v. Sanchez, 576 So.2d 470 (La.1991)decision, the supreme court in Russo emphasized that liability was not admitted until $100,000 was "paid," as well as stressing that the settlement could not include "any" discounts for amounts the victim was not legally obligated to pay, stating, "$100,000 means $100,000." Russo, 648 So.2d at 884. In the case at bar, neither Physicians National Risk Retention Group nor Dr. Barry have satisfied any of the Ceasars' obligations. To uphold the trial court's decision would be to allow a discount for insurer insolvency.
*337 The Louisiana Medical Malpractice Act requires payment of the $100,000 "settlement" in order to trigger the health care provider's statutory admission of liability. La.R.S. 40:1299.44(C)(5) specifically states: "... [T]he court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars." (Emphasis added). When the law is clear and unambiguous and its application does not lead to absurd consequences, well accepted principles of statutory interpretation dictate that the statute should be applied as written. Only actual payment of the full $100,000 amount equates to a statutory admission of the health care provider's liability. That a health care provider judicially confesses liability, as in Morgan, Russo, Koslowski, and the case at bar, although surely relevant, is not a statutory admission and, therefore, is of no moment in determining whether statutory liability has been triggered.
I would hold that since the Ceasars did not receive the statutory threshold amount of $100,000, the Fund should not be prohibited from challenging Dr. Barry's liability. I, therefore, respectfully dissent.
NOTES
[1] Elvia Ceasar sought prenatal care from Dr. Barry in 1986. She was both diabetic and obese; the Ceasars contend that Dr. Barry did not treat these conditions, nor did he foresee the complications they would cause in the development and birth of the baby. Dr. Barry was the attending physician when Elvia went into labor on May 15, 1987. The delivery was difficult and complicated, requiring the use of forceps. The baby weighed eleven pounds at birth and had unusually large shoulders; he was diagnosed with dystocia and Erb-Klumpke Palsy, allegedly the results of the traumatic delivery. The plaintiffs also suggest that the child's recently diagnosed learning disability may be the result of birth trauma also.
[2] PNRRG is the same insurer as in the case sub judice.