804 So.2d 85 (2001)
Susan ST. ROMAIN, Wife of/and Dale St. Romain Individually and on Behalf of the Estate of Their Minor Child, Gavin St. Romain
v.
Dr. Glen D. LUKER and United National Insurance Company.
No. 2000 CA 1366.
Court of Appeal of Louisiana, First Circuit.
November 9, 2001.
Rehearing Denied January 11, 2002.
*86 Byron J. Casey, III, Metairie, for Plaintiffs-Appellants Susan and Dale St. Romain.
Jacqueline G. Griffith, Lydia Habliston Toso, Griffith, Battard, and Johnson, L.L.C., New Orleans, for Defendants-Appellees Dr. Glen D. Luker and Louisiana Patient's Compensation Fund.
Before: CARTER, C.J., PARRO, and CLAIBORNE,[1] JJ.
PARRO, J.
This medical malpractice case involves the issue of standing by the Louisiana Patient's Compensation Fund (PCF) to contest the liability of a qualified health care provider that entered into a settlement for less than $100,000, as well as the issue of prescription regarding the plaintiffs' medical malpractice action. For the following reasons, the judgment of the district court is affirmed.

Factual Background and Procedural History
On March 1, 1991,[2] seven-month-old Gavin St. Romain (Gavin) was taken by his parents to Northshore Regional Medical Center (Northshore) at approximately 4:30 a.m. with complaints of high temperature and respiratory difficulties. After examining Gavin and obtaining the results from a test he had ordered performed on Gavin, Dr. Glen D. Luker, an emergency room physician, diagnosed him with right otitis media (an ear infection). He was given a Tylenol suppository and liquid Amoxil and was discharged from the hospital. Oneand-a-half hours later, Gavin went into a cardio-respiratory arrest at home. An ambulance was called, and the infant was taken back to Northshore at approximately 8:30 a.m. Despite aggressive measures to save him, he expired.
By letter dated February 28, 1992, Gavin's parents (the St. Romains) filed a complaint to invoke a medical review panel, naming Northshore as the lone defendant. In their complaint, the St. Romains alleged *87 that acts of medical negligence were committed by the defendant, its agents, and/or employees during the course of the medical treatment rendered to Gavin in the emergency room of Northshore on March 1, 1991, which resulted in Gavin's death. In a letter dated October 8, 1992, Northshore informed the St. Romains that Dr. Luker, who was believed to be a qualified health care provider under the Louisiana Medical Malpractice Act (MMA), was not an employee of the hospital. Subsequently, the St. Romains sought verification from the PCF as to Dr. Luker's status as a qualified health care provider. Such verification was received from the PCF via notice dated October 9, 1992. On October 13, 1992, the St. Romains filed a supplemental and amending complaint with the PCF, naming Dr. Luker as a defendant in their petition for a medical review panel.
The medical review panel found no breach of the standard of care by either Dr. Luker or Northshore. Subsequently, the St. Romains filed a petition for damages in district court against Dr. Luker and his insurer. Northshore was not named as a defendant in the St. Romains' petition, nor was there any act of malpractice alleged against Northshore. The St. Romains settled their claims against Dr. Luker for $50,000. The district court signed an order approving the settlement and granting the St. Romains permission to proceed against the PCF for additional damages.
Following the filing of its answer to the joint petition for court approval of the settlement, the PCF filed an exception raising the objection of prescription, which was sustained by the district court. Pursuant to this ruling, the St. Romains' claims against the PCF were dismissed.[3] From the judgment sustaining the PCF's exception of prescription and dismissing their claims, the St. Romains appeal and contend the district court erred in finding that (1) the PCF had standing to question the liability of Dr. Luker, (2) they had failed to comply with the requirements of LSA-R.S. 9:5628, and (3) that the time period for instituting a claim for medical malpractice had not been interrupted or suspended in this case.

Standing
The St. Romains submit that the PCF does not have standing to assert the exception raising the objection of prescription because it is not a party defendant in the action. They argue that following the plaintiffs' settlement with the health care provider, the PCF takes the proceedings as they are.
The MMA,[4] LSA-R.S. 40:1299.41 et seq., provides a scheme of compensation for medical malpractice victims who suffer injury or death after being treated by qualified health care providers. Russo v. Vasquez, 94-2407 (La.1/17/95), 648 So.2d 879, 882. Under this scheme of compensation, which sets out precise limits of liability and ceilings on recovery, the liability for damages of a single qualified health care provider is limited to $100,000 for the injury to or the death of any one person. LSA-R.S. 40:1299.42(B)(2). Moreover, the MMA provides that damages in excess of $100,000, but which do not exceed $500,000, shall be paid by the PCF. LSA-R.S. 40:1299.42(B)(3); Russo v. Vasquez, 648 So.2d at 882.
Louisiana Revised Statutes 40:1299.44(C)(5) makes it clear that when a malpractice claimant settles with a qualified health care provider or his insurer for *88 $100,000, that settlement triggers the PCF's liability for excess damages under LSA-R.S. 40:1299.42(B)(3). Stuka v. Fleming, 561 So.2d 1371, 1373 (La.1990). Such a settlement for $100,000 results in a statutory admission of liability, thus precluding the PCF from contesting the health care provider's liability. Stuka v. Fleming, 561 So.2d at 1374; see LSA-R.S. 40:1299.44(C)(5). However, a settlement of less than a full $100,000 is insufficient to trigger the PCF's statutory liability for excess damages and is insufficient to preclude the PCF from contesting the qualified health care provider's liability. Russo v. Vasquez, 648 So.2d at 884; see Stuka v. Fleming, 561 So.2d at 1374 n. 8. Therefore, it follows that if the PCF has the right to contest the liability of the qualified health care provider where there has been a settlement for less than $100,000, then the PCF necessarily has "standing" to do so. Obviously, there would be no other party available to contest such liability in light of the fact that the health care provider was no longer an active party to the litigation by virtue of his settlement.[5]
The St. Romains settled with Dr. Luker for $50,000. Since the settlement in this case was for less than a full $100,000, the PCF's statutory liability for excess damages was not triggered, and the PCF was not precluded from contesting Dr. Luker's liability.[6]See LSA-R.S. 40:1299.44(C)(5); Taylor v. Tulane University of Louisiana, 97-0977 (La.App. 4th Cir.9/17/97), 699 So.2d 1117, 1119. The right to contest Dr. Luker's liability includes the right to assert an exception raising the objection of prescription. See Russo v. Vasquez, 648 So.2d at 884.

Prescription
Louisiana Revised Statutes 9:5628 governs prescriptive and peremptive periods applicable to medical malpractice actions. Louisiana Revised Statutes 9:5628(A) states that such actions must be filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims must be filed, at the latest, within a period of three years from the date of the alleged act, omission, or neglect. Generally, the burden of proving that a cause of action has prescribed rests with the party pleading prescription; however, when the plaintiff's petition shows on its face that the prescriptive period has run, and the plaintiff is contending there is a suspension or interruption of prescription, the burden is on the plaintiff to prove suspension or interruption. Burdeaux v. Cline, 626 So.2d 1205, 1207 (La.App. 2nd Cir.1993), writ denied, 93-3132 (La.2/11/94), 634 So.2d 833.
The PCF contends that the St. Romains filed their medical malpractice claim against Dr. Luker more than one year from the date of the alleged act of malpractice and that their suit was untimely pursuant to LSA-R.S. 9:5628. The district court found that the date of the alleged act of malpractice (and its discovery) was *89 clearly March 1, 1991.[7] This finding is reasonably supported by the record and is not manifestly erroneous. Thus, a claim filed after March 1, 1992, would on its face appear to be untimely.
Although the St. Romains filed a request for a medical review panel within the one-year prescriptive period provided by LSA-R.S. 9:5628, they neglected to name Dr. Luker as a defendant at that time. Their petition was not amended to assert a claim against Dr. Luker until October 13, 1992, more than one-and-a-half years after the alleged act of malpractice. Therefore, their petition alleging claims of malpractice for the treatment, examination, and/or evaluation performed on March 1, 1991, is, on its face, prescribed. Accordingly, the St. Romains had the burden of proving suspension of prescription.

Suspension of Prescription
The St. Romains look to LSA-R.S. 40:1299.47(A)(2)(a) as the basis for their contention that the timely filing of a request for the review of a claim against Northshore suspended the running of prescription against Dr. Luker. Louisiana Revised Statutes 40:1299.47(A)(2)(a) provides:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until sixty days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review. Filing a request for review of a malpractice claim as required by this Section with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription.
The St. Romains correctly note that the statute provides that the institution of their complaint with the PCF was sufficient to suspend the time within which suit must be filed in district court. Based on the statutory language to that effect, they contend that the original complaint filed against Northshore suspended the prescriptive period as to all defendants subsequently named in the medical review panel process. The fallacy in this contention lies in the statutory language that further provides that the filing of a request for review of a claim shall suspend the running of prescription "against all joint and solidary *90 obligors, and all joint tortfeasors," to the same extent that prescription is suspended against the party that is the subject of the request for review. LSA-R.S. 40:1299.47(A)(2)(a). Based on this language, which we find applicable to the instant case, the PCF maintains that when the St. Romains sought a review of their claim against Northshore on February 28, 1992, prescription was suspended in accordance with LSA-R.S. 40:1299.47(A)(2)(a) only against obligors who were solidarily or jointly liable with Northshore.
Since the St. Romains' basis for claiming suspension of prescription is the solidary liability between two or more parties, they had the burden of proving that solidary relationship. See Younger v. Marshall Industries, Inc., 618 So.2d 866, 869 (La.1993). The medical review panel ruled that Northshore was not negligent. Moreover, the St. Romains chose not to name Northshore as a defendant in their district court suit; nor did their petition allege any act of negligence by Northshore or the solidary liability of Dr. Luker and Northshore. Furthermore, the record does not contain proof of such liability. In the absence of any such allegations and/or proof, we conclude that the St. Romains failed to meet their burden of proving a suspension of prescription based on solidary liability. See Younger v. Marshall Industries, Inc., 618 So.2d at 871. Accordingly, we are unable to find error in the district court's sustaining of the PCF's exception of prescription.

Decree
For the foregoing reasons, the judgment sustaining the PCF's exception raising the objection of prescription and dismissing the St. Romains' suit is affirmed. The St. Romains' motion to strike relative to the PCF's claim of prescription, as well as the PCF's motion for sanctions, are denied. Costs of this appeal are assessed to Susan and Dale St. Romain.
AFFIRMED; MOTIONS DENIED.
NOTES
[1] Judge Ian W. Claiborne, retired from the Eighteenth Judicial District Court, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] All statutory references in this opinion are to those versions of the applicable law that were in effect on March 1, 1991.
[3] The St. Romains' motion for new trial was denied.
[4] See 1975 La. Acts, No. 817.
[5] See LSA-R.S. 40:1299.42(D)(5) (which provides that a partial settlement shall not bar the continuation of the action against the PCF for excess damages).
[6] In light of the settlement between the St. Romains and Dr. Luker, we find the facts of Potier v. Commissioner of Insurance, 98-1063 (La.App. 1st Cir.11/10/99), 753 So.2d 305, writ denied, 00-0319 (La.4/20/00), 760 So.2d 345, to be clearly distinguishable from those of the instant case, because there was no settlement, partial or otherwise, involved in that case.
[7] Since the district court held the St. Romains knew or should have known as of March 1, 1991, that Dr. Luker was the physician that treated Gavin on the day in question, we conclude that the holding in Shortess v. Touro Infirmary, 520 So.2d 389 (La.1988), does not support the St. Romains' contention that their petition was filed timely. Nor do we find persuasive the St. Romains' argument that the prescriptive period provided by LSR.S. 9:5628 did not commence to run until June 3, 1992, the date on which they allegedly obtained constructive knowledge that Gavin's death was caused by medical negligence on March 1, 1991.