DREW, J.
hAt issue are the trial court’s assessment of 50/50 fault to the two drivers and amount of damages awarded plaintiffs, Mary C. and John Wayne Hayes, for injuries resulting from an auto accident. The judgment of the trial court is amended and, as amended, affirmed.
FACTUAL AND PROCEDURAL BACKGROUND
On December 28, 2001, a car driven by Leora Johnson and insured by State Farm Mutual Automobile Insurance Company collided with a vehicle driven by Mary C. Hayes on U.S. Highway 371 in Coushatta. Both vehicles were southbound on the north/south running road.
On the east side of the highway, Piggly Wiggly Drive formed a T-intersection with Highway 371 (Ringgold Drive). Mrs. Hayes stopped at the stop sign where Pig-gly Wiggly Drive entered the highway and then proceeded to turn left onto Highway 371 to travel south. Mrs. Johnson entered Highway 371 from the west side, leaving the parking lot of Southmoor Insurance Company and also driving south. The impact was at Hayes’ passenger side front wheel, front fender and passenger door and at Johnson’s driver’s side front corner.
Mr. and Mrs. Hayes sued John W. Johnson, owner of the vehicle; Leora Johnson, driver; and State Farm Insurance Compa *745 ny for damages. State Farm Mutual Automobile Insurance Company and the Johnsons answered, denied liability and, alternatively, asserted that Mary Hayes’ negligence barred her recovery. In an amended petition, Mr. and Mrs. Hayes asserted that the Johnsons’ liability coverage was insufficient to 12cover the damages and named as a defendant the Hayes’ auto insurer, also State Farm, for uninsured coverage.
Following trial on the merits, the trial judge issued oral reasons for judgment and concluded that the Johnson vehicle entered the road at an angle while she was looking back to the north checking for southbound traffic. Concerning the Hayes vehicle, the trial judge stated that Mrs. Hayes could very well have been across the lane when she got hit and that he did not think she had completed her left turn and was traveling south down the highway. Stating he was very familiar with the location of the wreck, the trial judge found that both parties were completely honest about their versions of entering the road. Since each driver was at fault in some way, the trial court apportioned the fault at 50% each.
In the judgment signed June 6, 2005, the trial court set the following damages:
Special Damages $13,014.79
General Damages $24,000.00
Future Pain and Suffering $ 5,000.00
Future Medical Expenses $ 5,000.00
Loss of Consortium $ 2,500.00[1]
The trial judge gave State Farm a $5,000.00 credit for a medical payment on the Hayes policy and assessed costs against the defendants.
The Johnsons and State Farm appealed, complaining that the trial court erred in assessing liability at 50% each. • The defendants objected to quantum, arguing that some medical treatment was not attributable to the accident; the. general damages were excessive, and future medicals and pain 13and suffering were not proven at trial. The plaintiffs answered the appeal, -requesting that the 50% fault assessed against Mrs. Hayes be reduced to 0% and the costs of the appeal be charged to the defendants.
DISCUSSION
In Bryant v. Newman, 39,437 (La.App.2d Cir.4/20/05), 900 So.2d 343, 348, this court cited the standard set out in Rosell v. ESCO, 549 So.2d 840, 844-845, (La. 1989), which is appropriate in this dispute:
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences. are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous— clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review *746 function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest error- — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its J^deeision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

0Citations and footnotes omitted.)

Liability

While another trier of fact may have allocated the liability differently, our review of this record reveals that the trial court’s 50/50 apportionment of fault to both drivers is reasonable and should not be disturbed on appeal. The defense contention was that Mrs. Hayes essentially pulled into the path of the Johnson vehicle, while Mrs. Hayes’ position was that Mrs. Johnson had not entered the highway when she began her own left turn and that Mrs. Johnson was looking north while entering the southbound lane. The record shows that both drivers should have been more observant.
Mrs. Hayes testified she looked right, left, and back to the right to determine the road was clear before she turned left onto Highway 371. She did not see the Johnson vehicle prior to the collision which stopped the Hayes vehicle. According to Mrs. Hayes, the two drivers discussed the accident and neither knew what happened.
The investigating officer stated that both Mrs. Johnson and her passenger stated they did not know what happened and that the Johnson vehicle entered the road at an angle from the parking lot on the west side of the road.
Mrs. Johnson testified she was driving her father-in-law’s car accompanied by Stacy Bolyer and her two sick children whom the women had taken to the doctor. They had stopped at the cell phone business in [sSouthmoor Insurance to speak with Mr. Bolyer. Mrs. Johnson stated that she entered the road and “out of the corner of my eye I[saw] a car, and before I knew it I hit it.” She said she slammed on her brakes.
Given the testimony, the evidence, and the court’s familiarity with the accident scene, the trial court was reasonable in concluding that the accident happened when Mrs. Hayes was in the midst of her left turn and Mrs. Johnson was looking back to the north checking for southbound traffic as she pulled southbound onto the road. Both ladies failed to keep a proper lookout and to see the other vehicle. Neither manifest error nor clear wrong occurred in assessing the two drivers with 50% of the fault each.

Quantum

In Robinson v. Tolbert, 40,488 (La.App. 2d Cir.1/20/06), 920 So.2d 346, this court noted that the trier of fact has great discretion when assessing damages. Before an appellate court may disturb an award for general damages, the record must clearly reveal that the trial court abused its broad discretion in making the award, based on the facts and circum *747 stances peculiar to the case and the individual under consideration. The correct procedure for determining whether an award is excessive is to determine whether the amount can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the trier of fact; likewise, to determine if an award is inadequate, the evidence must be viewed in the light most favorable to the defendant. In a personal injury case, the defendant takes her victim as she finds her and is responsible for all natural and probable consequences of her tortious | r,conduct. When the defendant’s conduct aggravates a preexisting condition, she must compensate the victim for the full extent of the aggravation. Robinson, supra.
Remarkably, Mrs. Hayes was in a total of three auto accidents near the time of this accident. On August 10, 2001, Mr. Hayes was driving Mrs. Hayes home to Shreveport when he blacked out and their vehicle struck a pole. Mrs. Hayes sustained significant injuries which she described as primarily to her right side and to both breasts, one of which required subsequent surgery. Mrs. Hayes sought treatment for her back, right shoulder, and right hip. Mr. Hayes stated that his wife’s injuries were caused by the seatbelt.
In this accident on December 28, 2001, Mrs. Hayes stated she injured a different area in the middle of her back, her left shoulder and neck; in addition, she had headaches and an injured left middle finger which is stiff, swollen, and unable to close into a fist. Mrs. Hayes testified she received injections in her shoulder for pain and wore a back brace when she had to stand for longer than approximately fifteen minutes. She also required a neck roll pillow and a cushion for riding in the car. In her view, the December accident stirred up and worsened the injuries sustained in the August 2001 accident. The injury to her finger totally changed her left hand, which continued to stiffen and worsen after the December 2001 wreck. At trial Mrs. Hayes showed to the trial court her left shoulder area which she stated had weakened -and dropped with muscle deterioration.
|7The third vehicular accident in April 2003 aggravated her previous injuries. Mrs. Hayes testified that her ongoing visits to Dr. Hernandez and to Dr. Swart were related to the December 2001 accident and not to the subsequent April 2003 collision in which she was rear-ended.
The Hayes family and friends described to the court how Mrs. Hayes’ injuries had adversely affected their lives. Following this December 2001 accident, Mrs. Hayes was very reluctant to drive and became a nervous driver who appeared to have road rage, since the middle finger of her left hand did not bend. She was unable to continue assisting her husband with clerical work, bookkeeping, and deliveries in his work. While Mrs. Hayes formerly was a very active house cleaner and gardener, Mr. Hayes now has to perform those duties. Because she did not feel well or sleep well, the couple’s sex life suffered.
A family friend, Linda Clark, testified Mrs. Hayes appeared to be recovering from the August 2001 accident when the December 2001 wreck occurred. Due to neck and shoulder pain in this accident, Mrs. Hayes was unable to continue walking for exercise and to do heavy housework, such as mopping, vacuuming, washing walls, and cleaning bathrooms, which Mrs. Hayes had done prior to the December 2001 accident. Pat Bice stated that Mrs. Hayes was beginning to get out and do things following the August 2001 wreck but the December 2001 wreck was a “setback.” She had more pain in her left side and her finger and was unable to walk or *748 do housework, plus she was unable to and less interested in socializing after the accident.
[sThe Hayeses’ daughter stated that her mother can no longer wear shoes with heels and is very stiff if she sits for long. Before her injury, her mother had been an immaculate housekeeper. Her parents’ home is now “a wreck,” according to their daughter, who said that their social and church activities, such as helping with funerals, have decreased since her mother does not feel well on many occasions.
Dr. Robert C. Hernandez saw Mrs. Hayes in the emergency room after her first accident in August 2001 in which the Hayes vehicle struck the telephone pole at 60 mph. Her primary complaints in August were musculoskeletal injuries of her spine, back, and breast, which later required surgery to remove necrotic tissue.
The doctor acknowledged on cross-examination that the December 2001 collision was low speed and low impact but with torsion because she was hit from the side. In his view, her August injuries were improving at the time of the December wreck in which she sustained a markedly swollen finger which he thought was a major joint injury. In addition, her shoulder complaints showed major aggravation after the second accident in December 2001. Dr. Hernandez treated the shoulder pain and inflammation with periodic shots into the joint, which gave Mrs. Hayes some short term relief. According to the doctor, the episodes of inflammation and pain in her left shoulder could last for years and could be easier to reinjure.
Her recovery from the December 2001 accident at the time of the doctor’s deposition was at 80% function of the left shoulder and 50-60% flexion in the middle left finger. While the potential for a 100% recovery in | flthe left shoulder was present, the doctor explained that Mrs. Hayes was limited in therapy by the pain. Dr. Hernandez explained that Mrs. Hayes did not lack motivation to get over her injury but that the physical therapy was very painful and the shoulder is the weakest joint in the body. She was physically, not emotionally, limited in therapy by the pain.
Dr. Gary H. Swart, chiropractor, began treating Mrs. Hayes in November 2001 for injuries she sustained in the August 2001 accident including neck and shoulder pain, upper back and right lower back pain, along with headaches. She was having moderate to severe shoulder pain, which Dr. Swart stated was more right than left side. His treatment consisted of manipulation, electrical stimulation, and ultrasound. Initial twice-weekly visits were decreased to once a week in mid-November. Dr. Swart described her as improving, having reached 60% of her pre-accident status by November 15 and on December 22, 60% — 70% of pre-accident status.
When Dr. Swart next saw Mrs. Hayes on January 10, 2002, she reported the December 28 auto accident. Her symptoms were severe neck, shoulder and upper back pain with stiffness, with the right a bit more than the left. She seemed to have more shoulder and spine complaints. The doctor opined that her injuries were more severe in the second accident. In addition to the treatments already being administered, Dr. Swart added massage therapy for the injured areas. Her pain worsened in February when she started developing considerable pain in her left shoulder. By her May 2, 2002, visit, Dr. Swart noted that she had actual shoulder capsule pain, which hnhe attributed to the seat belt. He opined that type of injury could manifest itself long after an accident.
Dr. Swart saw her less frequently over the summer of 2002 since pain from her breast surgery made it difficult for her to *749 receive chiropractic treatment. By September 9, she reported increased left shoulder pain and loss of strength in her left arm, with pain in her neck and lower back. Her shoulder had improved on a September 12 visit because she had a recent cortisone shot into that joint. On October 3, she showed some improvement; her shoulder was approximately the same but she had fewer headaches. On October 24, her shoulder was still very sore. In November, she showed improvement for three or four days after treatment after which the stiffness returned. In December, she was in “pretty bad shape,” and in January, she was better since she had recently gotten a shot in her shoulder.
She was in another accident April 1, 2003, in which a driver struck her car from the rear. New symptoms were the onset of mid-back pain and breast pain. Dr. Swart stated she had not resolved all her complaints from the December 28, 2001, accident when the April 2003 accident increased her pain, which was both related to that last accident and worsened her preexisting injuries. Dr. Swart stated that after the second accident in December 2001 (at issue here), her shoulder complaints were in the forefront. Muscle spasms and trigger points were objective findings by the chiropractor after all three accidents.
On being asked when she could have completed treatment for the second accident (before the third accident), Dr. Swart gave a “rough estimate” l^that she probably would have reached maximum medical improvement within four to five months, but she would never reach her pre-acci-dent health status. The chiropractor stated that her pain associated with the second accident was moderate to severe and that pain never reached the mild stage.
When viewed in the light most favorable to Mrs. Hayes, the general damages awarded, while generous, were reasonable based on the these facts and the particular circumstances of this victim who bears 50% of the fault in this collision.
The treating doctors agreed that she sustained substantial injuries in the December 2001 collision which worsened the initial injuries from which both doctors agreed she was recovering. While she had some shoulder problems in the past and with the first accident, the medical testimony was that she sustained significant injury to the left shoulder, which was problematic following the December 2001 wreck. Dr. Hernandez described her finger injury as “major.” Lay testimony clearly established that Mrs. Hayes suffered an appreciable reduction in the quality of all aspects of her life due to the injuries sustained when her vehicle was struck by Mrs. Johnson’s vehicle in December 2001. Our review of the testimony and the medical records placed into evidence do not reveal that the trial court committed manifest error or was clearly wrong in setting the general damages.
Asserting that the trial court erred in awarding all of Mrs. Hayes’ requested medical expenses ($13,014.79) following the December 2001 accident, the defendants contended that portions of that medical treatment were related to pre-existing conditions and the April 2003 accident. Our | ^examination of the medical bills submitted by the plaintiffs reveals that a reduction of a portion of the award for the period following the April 1, 2003, accident is appropriate. Dr. Swart detailed specific injuries from the third wreck, including new mid-back pain and new right breast pain and increased right'suboccipital (base of skull) pain. Dr. Swart increased her visits after the third accident and attributed her increase in pain following the April 1, 2003, rear-end collision to both the December 2001 and the third accidents. *750 Because Mrs. Hayes suffered unique injuries in each of the three collisions along with the documented aggravations of preexisting injuries, we find that the trial court erred in awarding the entire amount of Mrs. Hayes’ medical expenses for the second accident. Therefore, we amend the award for medical expenses to reduce it by a third to $8,676.53.
The defense argued that Mrs. Hayes failed to prove she was entitled to recover for future medical expenses. In Hanks v. Seale, 2004-1485 (La.6/17/05), 904 So.2d 662, the supreme court explained that when the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses because the record does not provide the exact value of the necessary expenses. In that situation, the court must be able to determine from evidence of past medical expenses and other evidence what is the minimum amount upon which reasonable minds could not disagree will be required. Hanks, supra.
Both doctors agreed that Mrs. Hayes would not be likely to fully recover from her December 2001 injuries. Dr. Hernandez stated that it might be possible for her to go from an 80% recovery to a 100% recovery after six | ^months with a professional shoulder physical therapist that was “pretty expensive. There are only a few people that do really good shoulder work, in this area.” Because plaintiffs did not establish that the future physical therapy or any other medical treatment was both necessary and inevitable, we conclude that the trial court erred in awarding $5,000.00 for future medical expenses.
We reject the defendants’ complaint about the trial court’s award for Mrs. Hayes’ future pain and suffering. The testimony of both Dr. Hernandez and Dr. Swart was consistent that Mrs. Hayes was not likely to ever recover 100% from the injuries sustained in the December 2001 accident. While Dr. Swart gave a “rough estimate” that Mrs. Hayes could reach maximum medical improvement in four to five months (after the April 2003 wreck, had it not occurred), he was clear that she would not recover completely. Dr. Hernandez stated at his deposition that her pain and symptoms could last for years. Dr. Swart’s chiropractic treatments gave Mrs. Hayes some temporary relief, and Dr. Hernandez’s shots into her shoulder provided pain relief for longer periods. The trial court was not unreasonable in finding that she was entitled to be awarded $5,000.00 for her future pain and suffering.
DECREE
Based upon our review of this record, we find that the trial court erred in awarding the plaintiffs $5,000.00 for future medical expenses and in awarding the entire requested amount of the medical expenses. Therefore, the judgment of the trial court is amended to delete the $5,000.00 award for future medical expenses and to reduce by one third the special damages for 114medical expenses from $13,014.79 to $8,676.53. In all other respects, the judgment of the trial court is affirmed with the plaintiffs and the defendants paying the costs of the appeal.
AMENDED, AND AS AMENDED, AFFIRMED.

. The loss of consortium award to Mr. Hayes was not at issue in this appeal.